Patrick M. Flatley
United States Bankruptcy Judge
**Dated: Tuesday, September 06, 2011 3:23:57 PM**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| THOMAS SONNTAG and | ) | |
| HEATHER SONNTAG, | ) | |
| | ) | Case No. 10-1749 |
| Debtors. | ) | Chapter 7 |
| _____ | ) | |

### MEMORANDUM OPINION

The United States Trustee (the "USTE") seeks to dismiss, for abuse, the Chapter 7 bankruptcy case of Thomas and Heather Sonntag (the "Debtors") pursuant to 11 U.S.C. § 707(b)(2) on the grounds that the Debtors improperly deducted secured debt expenses totaling $2,865.07 on lines 42 and 43 of Official Form B22A ("Form 22A") for their prior residence, and deducted a rental expense of $2,500.00 per month for their current residence. The USTE also seeks dismissal for abuse based on the totality of the Debtors' circumstances pursuant to 11 U.S.C. § 707(b)(3).

For the reasons stated herein, the court will deny the relief requested by the USTE pursuant to § 707(b)(2) and will set an evidentiary hearing to determine whether the totality of the Debtors' circumstances demonstrate abuse under § 707(b)(3).

### I. BACKGROUND

The Debtors are married and have a household of four. Mr. Sonntag has been employed by Gall Zeidler Consultants, LLC, for over five years, and Mrs. Sonntag has been employed by Prospect Waterproofing for over 10 years. The Debtors' current monthly income, as reflected on Form 22A, is $11,820.00, and the Debtors do not anticipate any substantial variation in income for the foreseeable future. The Debtors filed their Chapter 7 bankruptcy petition on August 13, 2010.

Before July 2010, the Debtors resided in Charles Town, West Virginia (the "Charles Town

1

property"). The Debtors' former residence, securing a debt of $353,943.00 owed to Wells Fargo Home Mortgage ("Wells Fargo"), is valued in their petition at $249,000.00. The Debtors have not made any monthly payments on this debt since April 2010.[1]

In July 2010, the Debtors relocated to Ashburn, Virginia (the "Virginia property") so that they could be closer to their respective places of employment. The Debtors entered into a yearly lease agreement for their new home and pay $2,500.00 per month. Since moving to their Virginia home, the Debtors have been marketing their Charles Town property for sale, and, on September 20, 2010, the Court entered an order granting Wells Fargo's motion for relief from the automatic stay. After deducting their expenses from their current monthly income on Form 22A, the Debtors claim to have negative $793.81 per month in disposable income.

## II. DISCUSSION

The USTE asserts that the Debtors improperly claimed a secured debt payment on Form 22A for property the Debtors do not intend to keep, and improperly claimed a $2,500.00 lease payment for the Virginia property. The USTE asserts that the Debtors may not claim both the secured debt payment and the lease expense, and the Debtors' actual ability to repay creditors results in a finding of abuse under § 707(b)(3). The Debtors assert that § 707(b)(2) requires them to claim their mortgage deduction because it was contractually due at the time the Debtors filed their case, and the totality of their circumstances justify their deductions based on an increase in living expenses associated with their relocation.

"Congress enacted the Bankruptcy Abuse Prevention and Consumer Act of 2005 . . . to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S.Ct. 1324, 1329 (2010). After 2005, the Bankruptcy Code provides a mechanism by which the filing of a Chapter 7 petition by above the median income debtors is presumed to be abusive if Form 22A yields a minimum amount of monthly disposable income. 11 U.S.C. § 707(b). A debtor's monthly disposable income is calculated by determining the debtor's current monthly income ("CMI"), as defined under 11 U.S.C. § 101(10A), and subtracting defined allowances for living expenses, including secured and priority debt payments. *Lynch v. Haenke*, 395 B.R. 346, 348

---

[1]In their Chapter 7 Statement of Intention, the Debtors state that they intend to retain their Charles Town property and attempt to make regular payments/negotiate with Wells Fargo.

2

(E.D.N.C. 2008). From this formula, a court is to extrapolate how much a debtor can repay creditors over 60 months. 11 U.S.C. § 707(b)(2)(A)(i).

## A. Presumption of abuse under § 707(b)(2).

The USTE asserts that the Debtors cannot properly claim the secured debt payment deductions on lines 42 and 43 for their Charles Town property because the Debtors no longer incur these expenses. The Debtors assert that § 707(b)(2) requires them to claim their mortgage deduction because it was a contractually due obligation at the time the Debtors filed their case.

Regarding secured debt payments, the statute provides:

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of-
(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition;

. . .

divided by 60.

§ 707(b)(2)(A)(iii)(I).

This court has previously held that "the term 'scheduled as contractually due' means those secured debt obligations incurred . . . pre-petition, for which installment payments are scheduled to be due post-petition . . . ." *In re Quigley*, 391 B.R. 294, 302 (Bankr.N.D.W.Va. 2008). Under the language of the statute, no distinction is made between debts that are secured by property a debtor intends to surrender and debts secured by property a debtor intends to keep. *Id*. at 303. Thus, in *Quigley*, the court determined that it would not read such a limitation into the means test when no such limitation was provided by Congress. *Id*.

Subsequently, the Supreme Court of the United States has endorsed the view that a debtor's historical experience is but a "starting point," at least for determining how much income a debtor has to pay creditors in a Chapter 13 case when a "projected disposable income" objection is made to confirmation.[2] *Hamiltion v. Lanning*, 130 S.Ct. 2464, 2475 (2010) ("[A] person making a projection uses past occurrences as a starting point . . . ."). Shortly after issuing its opinion in *Lanning*, the Supreme Court of the United States stated in *Ransom*, that Congress intended to require

---

[2]The "projected disposable income" test in Chapter 13 incorporates subparagraphs A and B of § 707(b)(2) - which is at issue in this case - for debtors who earn income above the State's median income.

that "a debtor . . . qualify for a [means test] deduction by actually incurring an expense in the relevant category." *Ransom v. FIA Card Servs.*, 131 S.Ct. 716, 725 (2011).

The USTE relies on *Lanning* and *Ransom* in seeking disallowance of the Debtors' secured debt payment deductions for their Charles Town property. However, *Ransom* involved a Chapter 13 debtor who elected the IRS vehicle-ownership deduction for a 2004 Toyota Camry that he owned but for which he did not incur an ownership expense. Interpreting the word "applicable" as used in § 707(b)(2)(A)(ii)(I), the Court held that the statute requires a debtor to actually incur that kind of expense during the life of the plan, and because the debtor in *Ransom* did not incur such expense, he could not deduct ownership costs from his calculation of disposable income. *Ransom*, 131 S.Ct. at 724, 730. Here, in contrast, the language at issue is not § 707(b)(2)(A)(ii)(I), but § 707(b)(2)(A)(iii), which does not contain the word "applicable." Also, unlike *Ransom*, the Debtors' secured debt payments on the Charles Town property for which they took the deductions continued to accrue at the time they filed for Chapter 7 relief, and the secured debt payments continue to accrue. This court is not persuaded that the holding in *Ransom* has any effect on a debtor's ability to claim a means test deduction for contractually due secured debt payments, regardless of whether they are paying those debts. *See In re Scott*, Case No. 10-33131, 2011 WL 3501835, *4 (Bankr.S.D.Ill. August 9, 2011) ("Because § 707(b)(2)(A)(iii) specifically addresses how secured debt payments are to be calculated, . . . § 707(b) must be interpreted in such a way as to harmonize all of its various subparts."). Therefore, this court finds that the secured debt payment deductions taken by the Debtors for their Charles Town property are proper, if not required, under § 707(b)(2)(A)(iii).

Similarly, *Lanning* is not controlling in this case. The court recognizes that § 707(b)(2) requires above the median income debtors to complete a means test in conjunction with a bankruptcy filing – based partly on artificial factors – to prevent debtors who can pay creditors from abusing the provisions of Chapter 7 of the Bankruptcy Code. The court also recognizes that in *Lanning*, the Supreme Court of the United States held that in certain cases it may be necessary to deviate from the mechanical application of the means test in the context of a Chapter 13 case based on circumstances that were known or virtually certain to occur at the time of confirmation. Tellingly, however, the Supreme Court in *Lanning* did not state that the debtor filled out her means test incorrectly by including a one-time buyout from her employer in the calculation of her current

monthly income; rather, the Court examined the result of the mechanical application and stated that, under the circumstances of the case, it was merely a starting point from which the bankruptcy court should begin its determination of the debtor's ability to pay.

In effect, in *Lanning*, the Supreme Court altered the mechanical outcome of means testing via Official Form B22C by holding that in giving effect to the term "projected disposable income" bankruptcy courts may depart from the form based on circumstances that are known or virtually certain to occur in the future.[3]  Here, no phrase similar to "projected disposable income" is present in § 707(b)(2).  Grafting the forward looking approach now required in Chapter 13 cases onto the means test analysis in Chapter 7 cases is not required, nor justified.  As stated succinctly by one court:

> The U.S. Trustee contends that [§] 707(b)(2)(A) is a forward-looking assessment that cannot include payments the debtor will never make.
>
> . . .
>
> Neither [§] 707(b)(2) nor [§] 1325(b)(2) and (3) is a model of clarity.  It is clear, however, that the two sections are not identical.  The differences mean that cases interpreting [§] 1325(b) cannot be applied to [§] 707(b) without careful thought.
>
> The first crucial difference is that [§] 1325(b) speaks of the debtor's "projected disposable income," while [§] 707(b) does not. The word "projected" means that the court may consider at least some future events.  The phrase "scheduled as contractually due" in [§] 707(b) does not suggest that the court should consider future events (other than any that affect the debtor's contractual obligations).
>
> The second crucial difference is that . . . [§§] 1325(b)(2) and (3) require the court to follow two steps in determining the necessity and amount of expenses.  The first step requires the court to determine the necessity of expenses for a chapter 13 plan.  The court must decide what expenses the debtor must pay during the plan term, *i.e.*, in the future. The second step, which incorporates the means test, uses a static, backwards-looking approach to determine the amount of the expenditures.  Section 707(b) does not include the first step.  It never asks whether the contractual payments on a secured debt are necessary.

*In re Ng*, Case No. 10-02001, 2011 WL 576067, *2 (Bankr.D.Hawai'i Feb.9, 2011) (internal citations omitted).

---

[3]The Court went on to note, however, that, "[i]t is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." *Hamilton*, 130 S.Ct. at 2475.

Accordingly, in this case, the court rejects the USTE's argument that *Lanning* and *Ransom* prevent the Debtors from taking a deduction for secured debt on property that they intend to surrender. However, as addressed in the next section of this opinion, although secured debt payments on property to be surrendered may be included on Form 22A, the fact that the Debtors will not be incurring that expense in the future is a proper consideration in ruling on a motion to dismiss for abuse under § 707(b)(3), which allows the court to take into consideration that totality of the Debtors' circumstances in determining whether they are abusing the provisions of Chapter 7.

Finally, in regard to his contentions pursuant to § 707(b)(2), the USTE asserts that the Debtors have incorrectly claimed rental payments of $2,500.00 on line 21 of Form 22A. The court's resolution of the USTE's objection to the $2,500.00 deduction for the Debtors' rent being included on line 21 is irrelevant in this case, because the calculation of the means test allowing the secured debt expense deductions on lines 42 and 43 results in this case not being presumptively abusive, regardless of the court's determination, because the allowable mortgage/rent expense could properly be deducted on line 20B. The Debtors claim a rental deduction of $2,500.00. Although the Debtors may have claimed their deduction on the wrong line, they are entitled to a $2,064.00[4] rent/mortgage deduction on line 20B. Because the Debtors do not have an "average monthly payment" secured by their home, the calculation on line 20B would result in a $2,064.00 deduction, and, thus, the removal of the $2,500.00 from line 21 would not alter the outcome of the Debtors' means test in such a way that would require a finding that this case is presumptively abusive. Therefore, the court will not consider the issue of whether the Debtors properly deducted their rental expense on line 21, because the Debtors could have claimed their $2,064.00 deduction on line 20B.

**B. The totality of the circumstances under § 707(b)(3)**.

The USTE asserts that even if the Debtors' case is found to not be presumptively abusive, the court should still dismiss it for abuse based on the totality of the circumstances. The Debtors assert that the totality of the circumstances favors the Debtors in that they continue to be contractually obligated on the Charles Town property, and their cost of living has increased

---

[4]According to the Local Housing and Utilities Standards for cases filed between March 15, 2010, and October 31, 2010, the appropriate mortgage/rent expense deduction for a family of four in Loudoun County, VA is $2,064.00.

substantially since moving to Virginia.

Although court is not persuaded by the USTE's argument that the Debtors' inclusion of the secured debt expense deductions on the means test is improper and results in this case being presumptively abusive, the court is able to consider a debtor's actual ability to pay in deciding a § 707(b)(3) motion.  *In re Smith*, Case No. 09-691, 2009 WL 4262842, *3 (Bankr.N.D.W.Va. November 23, 2009).  However, the Debtors' ability to pay is only one factor which the court is to consider.  *Id*. at *4, n. 5 (determining that the factors enumerated in *Green v. Staples (In re Green)*, 934 F.2d 568, 572 (4th Cir. 1991) continue to be relevant as they relate to the totality of a debtor's circumstances).

Here, the parties have stipulated to certain facts, but such facts are insufficient for the court to resolve the USTE's § 707(b)(3) motion.  Therefore, a further evidentiary hearing is necessary for the court to make a determination of whether the totality of the circumstance of the Debtors' financial situation demonstrates abuse under § 707(b)(3)(B).

## III. CONCLUSION

For the above stated reasons, the court will enter a separate order denying the relief requested under § 707(b)(2) and setting an evidentiary hearing at which the Debtors and the USTE can present evidence and testimony regarding the totality of the circumstances of the Debtors' financial situation.